**SHELL OIL COMPANY,**
**Plaintiff-Appellant,**

v.

**Philip W. NOEL et al.,**
**Defendants-Appellees.**

No. 79–1393.

United States Court of Appeals,
First Circuit.

Argued Nov. 6, 1979.

Decided Dec. 26, 1979.

---

Robert G. Abrams, Washington, D. C., with whom A. M. Minotti, William Simon, Stuart H. Harris and Howrey & Simon, Washington, D. C., were on brief, for appellant.

Patrick J. Quinlan, Washington, D. C., with whom Dennis J. Roberts, II, Atty. Gen., Providence, R. I., was on brief, for appellees.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, WYZANSKI, Senior District Judge.*

* Of the District of Massachusetts, sitting by designation.

WYZANSKI, Senior District Judge:

This an appeal from the District Court's order granting defendants' motion to dismiss plaintiff's complaint. The District Court granted the motion on the ground that defendants were not proper parties to this action because they had no connection with the enforcement of the Rhode Island Motor Fuel Distribution and Sales Act of 1976, R.I.Gen.Laws §§ 5–55–5 and 5–55–6 (1978), as to which plaintiff sought a declaratory judgment under 28 U.S.C. §§ 2201, 2202 and also injunctive relief. We affirm the dismissal on the ground that there is no "case or controversy" within Article III of the United States Constitution.

On October 1, 1976 Shell Oil Company (Shell), a Delaware corporation, filed in the United States District Court for the District of Rhode Island a complaint against Philip W. Noel, Governor of the State of Rhode Island and Julius C. Michaelson, Attorney General of the State of Rhode Island.

In its complaint plaintiff alleges that it is a producer and refiner of crude oil, and a wholesale and retail marketer of petroleum products. The complaint then quotes in full what are now §§ 5–55–5 and 5–55–6 of R.I.Gen.Laws.[1] The general thrust, subject to some qualifications, of those sections is as follows: § 5–55–5 makes it unlawful for any refiner, distributor, producer or transporter of petroleum products engaged in business in Rhode Island to discriminate in price between purchasers of petroleum products of like grade and quality and makes it unlawful for any wholesaler or reseller of petroleum products to sell at retail level for less than four cents below his wholesale price; and § 5–55–6 provides that no supplier shall hinder, coerce, or threaten any dealer for the purpose of preventing him from joining any trading association made up of dealers, and that suppliers shall be obliged to bargain in good faith with bargaining agents selected by dealers.

It is not and could not be alleged that Rhode Island has anywhere provided criminal sanctions, such as fine or imprisonment, specifically attached to either § 5–55–5 or § 5–55–6.

Plaintiff alleges that §§ 5–55–5 and 5–55–6 are unconstitutional under the Supremacy Clause of Article VI, Clause 2 of the United States Constitution because (1) they frustrate congressional purposes embodied in the Robinson-Patman Act, 15 U.S.C. § 13(a)–(f), and the Sherman Act, 15 U.S.C. § 1 et seq., (2) § 5–55–5 makes discrimination unlawful in some situations in which plaintiff would have a defense against the application of the Robinson-Patman Act, (3) the provision of § 5–55–5 making unlawful certain sales at retail for

---

1. The text of R.I.Gen.Laws §§ 5–55–5 and 5–55–6 is as follows:

5–55–5. Unfair practices.—It is unlawful for any refiner, distributor, producer or transporter of petroleum products engaged in business in this state, either directly or indirectly, to discriminate in price between purchasers of petroleum products of like grade and quality.

Nothing in this section shall prevent differentials which make only due allowance for differences in the cost of manufacture, marketing, transportation, sale, or delivery resulting from the different methods or quantities in which such commodities are to such purchasers sold and delivered.

Nothing in this section shall prevent persons engaged in selling goods, wares or merchandise in commerce from selecting their own customers in [bona fide] transactions and not in restraint of trade.

It shall be unlawful for any wholesaler or reseller of petroleum products to sell at retail level for less than four cents (4¢) below his wholesale price to wholesale accounts who resell at retail in the same market area.

Nothing in this section shall apply to the purchase of petroleum products for their own use by state and local agencies.

The provisions of this section shall only apply to producers, refiners or wholesalers whose total production, gasoline refining capacity or sales volume at the wholesale level is fifteen thousand (15,000) gallons a day or more.

5–55–6. Dealer trade associations.—No supplier shall hinder, coerce or threaten any dealer for the purpose of preventing him from joining any trade association made up of dealers. Dealers shall have a right to select bargaining agents to negotiate and deal with suppliers on an individual basis on matters having to do with their supplier-dealer relationship. Suppliers shall be obliged to bargain in good faith with agents so selected by the dealers. Such bargaining activity shall be pursued to the maximum extent permitted by law.

less than four cents below the wholesale price is in conflict with the Sherman Act, and (4) § 5–55–6 in permitting combinations among dealers is in conflict with § 1 of the Sherman Act.

The complaint alleges in paragraph 10 that if §§ 5–55–5 and 5–55–6 are not declared unconstitutional plaintiff will be subject to the risk of financial liability and injunction under § 5–55–8 of R.I.Gen. Laws[2]; but this paragraph does not allege that the Rhode Island Governor or Attorney General plans to initiate any suit. Nor is there anywhere else in the complaint any allegation of probable or even possible civil action or criminal prosecution by the Governor or State Attorney General. (Cf. Complaint, par. 23).

Defendants moved to dismiss Shell's complaint on the grounds[3] that (1) the Governor and Attorney General are not proper parties-defendant; (2) the complaint fails to present a justiciable controversy; and (3) the District Court does not possess subject matter jurisdiction over the claims raised.

On July 12, 1979 the District Court dismissed Shell's complaint on the sole ground that the Rhode Island Act "provides a purely private cause of action in its regulation of the economic relationships between [private] parties," and "neither the Governor nor the Attorney General ha[s] any connection with enforcement of the act."

We first address ourselves to the ground upon which the District Court rested its judgment, and consider whether defendants are proper parties.

■ In a suit brought to have a declaration of the unconstitutionality of a state statute or to enjoin the enforcement of the statute an officer of a state is an appropriate defendant if he has some connection with the enforcement of the act. *Ex parte Young*, 209 U.S. 123, 157, 28 S.Ct. 441, 453, 52 L.Ed. 714 (1908). It is not necessary that his duty should be declared in the act which is to be enforced. "The fact that the state officer by virtue of his office has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specifically created by the act itself, is not material so long as it exists." *Ibid.*

■ It is patently a question of state law whether and under what circumstances a particular defendant has any connection with the enforcement of the law of that state. But it seems to be universally assumed, correctly as we believe, that it is a question of federal jurisdictional law whether the connection is sufficiently intimate to meet the requirements of *Ex parte Young.* See Friendly, C. J. in *Gras v. Stevens*, 415 F.Supp. 1148, 1152 (S.D.N.Y.1976) (three-judge court) and the representative cases there cited.

■ The mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute. *Ibid.* Nor is the mere fact that an attorney general has a duty to prosecute all actions in which the state is interested enough to make him a proper defendant in every such action. *Mendez v. Heller*, 530 F.2d 457, 460 (2nd Cir. 1976); *Merrick v. Merrick*, 441 F.Supp. 143, 146 (S.D.N.Y.1977).

---

**2.** The text of R.I.Gen.Laws § 5–55–8 is as follows:

> 5–55–8. Legal and equitable remedies.— (1) If a franchisor or distributor engages in conduct prohibited under this chapter, a franchisee or a distributor may maintain a suit against such franchisor or distributor. Where such suit involves termination or nonrenewal for good cause the burden of establishing good cause shall be on the franchisor.
>
> (2) The court shall grant such equitable relief as is necessary to remedy the effects of conduct prohibited under this chapter, which it finds to exist, including declaratory judgment and mandatory or prohibitive injunctive relief. The court may grant interim equitable relief, and actual and punitive damages where indicated, in suits under this chapter and may, unless such suit is frivolous, direct that costs, reasonable attorney and expert witness fees be paid by the franchisor, in the event franchisee prevails.

**3.** The grounds are not quoted in the motion but in a memorandum not included in the record transmitted to us but recited at page 2 of plaintiff's brief.

Of critical importance are the nature of the statute and the state officer's connection with that statute. Thus it has been held that in an action attacking the constitutionality of a statute a governor or an attorney general has not a sufficiently intimate connection with the statute to be a proper defendant if all that is shown is that the statute in question determines the right of one private person to recover from another, (*Gras v. Stevens, supra*), or sets the jurisdictional requirements for divorce (*Mendez v. Heller, supra*), or governs the custody of a child, (*Merrick v. Merrick, supra*), or enables local authorities to grant liquor licenses (*McCrimmon v. Daley*, 418 F.2d 366, 368 (7th Cir. 1969)).

In the case at bar we have at least with respect to § 5–55–5 a situation which is distinguishable from those in the cases just cited. § 5–55–5 makes certain conduct "unlawful." Thus it recites that "It is *unlawful* for any refiner . . . of petroleum . . . to discriminate in price," and "it shall be *unlawful* for any wholesaler or reseller of petroleum products to sell at retail level for less than four cents (4¢) below his wholesale price . . . ." [Emphasis added]. A statute declaring conduct "unlawful" is of a different order of magnitude with respect to public policy than a statute which determines the right of one person to recover from another, or sets the jurisdictional requirements for divorce, or governs the custody of a child, or enables a local authority to grant a license.

■ Admittedly, the term "unlawful" is not synonymous with "criminal." *Commonwealth v. Hunt*, 45 Mass. 111, 123 (1842)

(Shaw, C. J.). The meaning of "unlawful" depends almost entirely upon the context. The Rhode Island state courts might hold that in the context of a statute regulating the pricing practices of oil refiners, wholesalers and the like, a description of conduct as "unlawful" implies that it is more than a mere tort or wrong to the purchaser. It may indicate that the conduct is a wrong against the general public, which injures the general welfare, and which if done in accordance with the agreement of two or more persons would support a conviction for criminal conspiracy. *Ibid.*

Hence we believe it is not fanciful to suppose that the state courts of Rhode Island would permit the Rhode Island Governor or Attorney General to bring an action pursuant to R.I.Gen.Laws § 5–55–5 to enjoin a refiner from unlawfully discriminating in the price he charges for petroleum, or to enjoin a wholesaler or reseller from selling at retail level for less than four cents below his wholesale price. See *In re Debs*, 158 U.S. 564 (1895).[4]

Were the Rhode Island court to apply to R.I.Gen.Laws, § 5–55–5, the federal doctrine enunciated in *In re Debs*, or were it to hold that R.I.Gen.Laws § 5–55–8(2) gave the Attorney General *ex officio* a right to enforce § 5–55–5—a point on which we express no opinion—then it seems to us that at least the Attorney General if not the Governor would be a proper party defendant in this case.

■ However, what we have just observed involves questions as to Rhode Island law which, so far as we are aware, Rhode

---

4. While *In re Debs*, 158 U.S. 564, 584, 586, 15 S.Ct. 900, 39 L.Ed. 1092 (1895) on its facts is a plainly distinguishable case, the case stands for the proposition that the chief executive and the head of the law department of any government have inherent authority to seek equitable relief against a person who threatens to injure or injures the general welfare. *In re Debs* held that where a person engaged or threatens to engage in a wrong against the general public, the federal government, within the scope of its jurisdiction, may, upon general principles, and without the need of specific statutory authorization, secure an injunction. As the Supreme Court stated at p. 584, 15 S.Ct. at p. 906:

Every government, entrusted, by the very terms of its being, with powers and duties to be exercised and discharged for the general welfare, has a right to apply to its own courts for any proper assistance in the exercise of the one and the discharge of the other, and it is no sufficient answer to its appeal to one of those courts that it has no pecuniary interest in the matter. The obligations which it is under to promote the interest of all, and to prevent the wrongdoing of one resulting in injury to the general welfare, is often of itself sufficient to give it a standing in court.

Island state courts have not settled. Rather than to try ourselves to answer those questions or to certify them to the Rhode Island state courts in accordance with R.I. Gen.Laws, § 9–24–25, *et seq.*, we prefer to dispose of this case on the ground that there is no "actual controversy" within the Declaratory Judgment Act, 28 U.S.C. § 2201, and no "case or controversy" within the scope of United States Constitution Article III.

 Although the requirements for the issuance of a judgment declaring that a state statute violates the Constitution are less severe than the requirements for the issuance of an injunction based on the same claim, *Steffel v. Thompson*, 415 U.S. 452, 468–474, 476, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), not even declaratory relief is available where the threat of state action is imaginary, speculative, or chimerical, *Ibid.*; *Boyle v. Landry*, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); *Poe v. Ullman*, 367 U.S. 497, 507–508, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961). Cf. *Younger v. Harris*, 401 U.S. 37, 52–53, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (injunctive, not declaratory, relief sought). To meet the standards of the Declaratory Judgment Act and indeed of Article III of the Constitution there must be a "live and acute controversy," *Steffel v. Thompson, supra,* 415 U.S. at p. 459, 94 S.Ct. 1209. "Basically, the question in each case is whether . . . there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). If a complaint fails to allege, or plaintiff fails to prove, that defendant state officers have ever taken or threatened to take any action with respect to a state statute then there is no "actual controversy" within the Declaratory Judgment Act, and there is "no case or controversy" within Article III. *Steffel v. Thompson*, 415 U.S. at pp. 459, 476, 94 S.Ct. 1209. The principle applies regardless of whether, as in *Younger v. Harris* ; *Boyle v. Landry*, and *Steffel*

*v. Thompson*, the state statute sought to be attacked provides criminal penalties. No matter what the type of case, federal courts are not empowered to give plaintiff advisory opinions where there is no actual controversy. See *Younger v. Harris, supra*, 401 U.S. at p. 52, 91 S.Ct. 746; Cf. *Poe v. Ullman, supra* ; *Golden v. Zwickler*, 394 U.S. 103, 110, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).

Since in the case at bar there is no showing that defendants intend to enforce R.I. Gen.Laws §§ 5–55–5 and 5–55–6—indeed they disclaim any authority to do so—there is no actual controversy which this court is empowered by United States Constitution Article III to adjudicate.

*Affirmed.*