In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-1756

JOHN DOE, formerly known as JANE DOE,

*Plaintiff-Appellant*,

*v.*

ERIC HOLCOMB, in his official capacity as Governor of the State of Indiana, CURTIS T. HILL, JR., in his official capacity as Attorney General for the State of Indiana, MYLA ELDRIDGE, in her official capacity as Marion County Clerk of the Court, and MARY WILLIS, in her official capacity as Executive Director of the Indiana Supreme Court Division of State Court Administration,

*Defendants-Appellees*.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:16-cv-02431-JMS-DML — **Jane Magnus-Stinson**, *Chief Judge*.

ARGUED SEPTEMBER 27, 2017 — DECIDED MARCH 2, 2018

* Michael Pence has been replaced by Eric Holcomb as Governor of Indiana, Gregory Zoeller has been replaced by Curtis T. Hill, Jr., as Attorney General for the State of Indiana, and Lilia G. Judson has been replaced by Mary Willis as Executive Director of the Indiana Supreme Court Division of State Court Administration.

_____

Before WOOD, *Chief Judge*, and FLAUM and KANNE, *Circuit Judges*.

KANNE, *Circuit Judge*. John Doe, whose legal name is Jane Doe,[1] is a transgender man residing in Marion County, Indiana. Though Doe is originally from Mexico, the United States granted him asylum in 2015 because of the persecution he might face in Mexico for being transgender. But this suit arises out of Doe's treatment in the United States. He alleges that he faces harassment and discrimination in the United States when he gives his legal name or shows his identification bearing it to others. Consequently, Doe seeks to legally change his name from Jane to John so that his name conforms to his gender identity and physical appearance, which are male.

Doe asserts that the Indiana statute governing name changes is unconstitutional because it requires name-change petitioners to provide proof of U.S. citizenship. Ind. Code § 34-28-2-2.5(a)(5) (2016).[2] As an asylee, Doe can't provide such proof. He brought this case against the Governor and Attorney General of Indiana, the Marion County Clerk of Court, and the Executive Director of the Indiana Supreme Court Di-

_____

[1] On November 22, 2016, U.S. Magistrate Judge Debra McVicker Lynch granted the plaintiff's unopposed motion to proceed anonymously, ordering that he be referred to in court filings as John Doe (or John Doe formerly known as Jane Doe). (R. 42 at 1, 4.)

[2] "(a) If a person petitioning for a change of name under this chapter is at least seventeen (17) years of age, the person's petition must include at least the following information: … (5) Proof that the person is a United States citizen."

vision of State Court Administration in their official capacities. He seeks a declaration that the citizenship requirement violates his First and Fourteenth Amendment rights and an injunction to prevent the defendants from enforcing it.

The district court dismissed Doe's case against all the defendants for lack of standing after the defendants filed motions to dismiss for lack of subject-matter jurisdiction. Doe appeals. We review the district court's dismissal *de novo*, accepting well-pleaded allegations as true and drawing reasonable inferences in favor of Doe. *See Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016); *Evers v. Astrue*, 536 F.3d 651, 656 (7th Cir. 2008). For the reasons discussed below, we affirm.

## I. ANALYSIS

Federal courts have jurisdiction over certain cases and controversies. U.S. Const. art. III, § 2. Standing is "the irreducible constitutional minimum" that determines which cases and controversies "are of the justiciable sort referred to in Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The party invoking federal jurisdiction must establish the elements of standing: (1) that he suffered an injury in fact, (2) that the injury is causally connected to the challenged conduct of the defendant, and (3) that the injury is likely to be redressed by a favorable judicial decision. *Id.* at 560–61.

But even if a plaintiff could otherwise establish that he has standing to sue a state or a state official, the Eleventh Amendment generally immunizes those defendants from suit in federal court. A plaintiff can avoid this bar, however, by naming a state official who has "some connection with the enforcement" of an allegedly unconstitutional state statute for the

purpose of enjoining that enforcement. *Ex parte Young*, 209 U.S. 123, 157 (1908).

Thus, where a plaintiff sues a state official to enjoin the enforcement of a state statute, the requirements of *Ex parte Young* overlap significantly with the last two standing requirements—causation and redressability. That is, a plaintiff must show that the named state official plays some role in enforcing the statute in order to avoid the Eleventh Amendment. But, in order to satisfy the requirements of causation and redressability, he must also establish that his injury is causally connected to that enforcement and that enjoining the enforcement is likely to redress his injury.

Here, Doe sued three state officials—the Governor, the Attorney General, and the Executive Director of the Indiana Supreme Court Division of State Court Administration—and one county official—the Marion County Clerk of Court. We take each defendant in turn to address whether Doe can sue them in federal court. He cannot.

A. *The Eleventh Amendment bars Doe's suit against the named state officials.*

Doe has not shown that any of the named state officials are connected with the enforcement of the name-change statute, so the Eleventh Amendment bars his suit against them.

1. *The Governor*

"The mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute." *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979). Instead, Doe must allege that the Indiana Governor played some role in enforcing the name-change statute.

Doe's strongest argument, though it still fails, is that the Governor plays a role in enforcing the name-change statute as head of the Bureau of Motor Vehicles ("BMV"). The BMV law provides that applications for driver's licenses or state-issued IDs must include "the full legal name of the applicant." Ind. Code § 9-24-9-2(1) (2016). And the BMV will not issue an ID to an applicant that reflects a different full name than what appears on the person's other legal documents unless the applicant provides a court order approving a full name change. *See* 140 Ind. Admin. Code 7-1.1-3(b)(1)(K) (2017). Together, Indiana's name-change statute and the BMV's requirements deny non-citizens the privilege of a full-name change on their identification.

Doe may have been able to overcome the Eleventh Amendment had he sued the Governor to enjoin the enforcement of the BMV's requirements. Instead, Doe sued the Governor in his official capacity to prevent him from enforcing the name-change statute. But the Governor was not specifically charged with a duty to enforce the name-change statute, s*ee Ex parte Young*, 209 U.S. at 158, and he has not taken on any duty to enforce it either, *see Love v. Pence*, 47 F. Supp. 3d 805, 808 (S.D. Ind. 2014). In short, the Governor doesn't do anything to enforce the *name-change statute*; if Indiana's statute permitted non-citizens to obtain a name change, then the BMV would, too. Consequently, the Eleventh Amendment bars this suit against the Indiana Governor. *See Watford v. Quinn*, No. 14–cv–00571–MJR, 2014 WL 3252201, at *2–3 (S.D. Ill. July 8, 2014) (noting that an Illinois statute prohibiting prisoners from petitioning for name changes "makes clear that it is the exclusive prerogative of the state circuit courts, not the Governor, to grant a name change," and holding that,

consequently, the Eleventh Amendment barred the suit against the governor).

2. *The Attorney General*

An attorney general cannot be sued simply because of his duty to support the constitutionality of a challenged state statute. *See Mendez v. Heller*, 530 F.2d 457, 460 (2d Cir. 1976). This duty does not make an attorney general an adverse party, but rather "a representative of the State's interest in asserting the validity of its statutes." *Id.* Instead, in order for a plaintiff to overcome the Eleventh Amendment, the attorney general must play some role in enforcing (not just defending) the complained-of statute.

Doe argues that the Attorney General enforces the name-change statute because he is vested with the broad authority to enforce criminal laws. To the contrary, however, the general rule in Indiana is that the Attorney General cannot initiate prosecutions; instead, he may only join them when he sees fit. *See* Ind. Code § 4-6-1-6 (2016); Ind. Code §§ 33-39-1-5, 12-15-23-6(d) (2017); *State v. Holovachka*, 142 N.E.2d 593, 603 (Ind. 1957). *But see Arnold v. Sendak*, 416 F. Supp. 22, 23 (S.D. Ind. 1976) (holding that the Attorney General was a proper defendant in a suit challenging a statute that made "abortion … a criminal act" because of his "broad powers in the enforcement of the criminal laws of the state"), *aff'd without addressing standing*, 429 U.S. 968 (1976).

Moreover, there are no criminal penalties for violating Ind. Code § 34-28-2-2.5(a)(5). It is true that the Attorney General could assist a local prosecuting attorney in a perjury prosecution if Doe perjured himself on his name-change petition by indicating he was a citizen. *See* Ind. Code §§ 4-6-1-6,

34-28-2-2(a) (2016); Ind. Code § 35-44.1-2-1 (2014). Some courts have suggested this would be enough. *See, e.g., Baskin v. Bogan*, 12 F. Supp. 3d 1144, 1152–53 (S.D. Ind. 2015) *aff'd without addressing standing*, 766 F.3d 648 (7th Cir. 2014). But that connection is too attenuated, especially considering that the Attorney General could not initiate the prosecution himself. Permitting Doe's complaint challenging § 34-28-2-2.5 to bring the Attorney General into court would extend *Ex parte Young* past its limits.

The Attorney General has not threatened to do anything, and cannot do anything, to prosecute a violation of § 34-28-2-2.5. *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996) ("*Young* does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute."). Our ultimate inquiry is whether the Attorney General's connection to the enforcement of the name-change statute "is sufficiently intimate to meet the requirements of *Ex parte Young*." *Shell Oil Co.*, 608 F.2d at 210. In this case, it is not. The Eleventh Amendment bars Doe's suit against the Attorney General from being heard in federal court.

### 3. *The Executive Director of State Court Administration*

Doe also named the Executive Director of the Indiana Supreme Court Division of State Court Administration as a defendant. He alleges that the Director caused his injuries because her office "prevent[s] or discourage[s] non-citizens from accessing changes of legal name." (R. 24 at 4.) The Director's office generates a form that is available online or at the clerk's office to help petitioners file name-change petitions. The form instructs petitioners to provide proof of U.S. citizenship. The Director's office also generates a form order for the

state court's use that includes the finding that "[t]he Petitioner has presented proof of United States citizenship." (Appellant's Br. at 11 (alteration in original).) These forms are provided for convenience; they are not mandatory.

Even though the Director works for the judiciary, she is nonetheless a state official for the purpose of the Eleventh Amendment. *See Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48 (1994) ("[T]he impetus for the Eleventh Amendment [is] the prevention of federal-court judgments that must be paid out of a State's treasury."). The Director's generation and publication of non-mandatory forms are not connected to the enforcement of the name-change statute. Accordingly, the Eleventh Amendment bars Doe from bringing this suit against the Director in federal court.

### B. *Doe failed to prove that he has standing to sue the Marion County Clerk of Court.*

The Marion County Clerk of Court concedes that she is not a state official, and therefore the Eleventh Amendment does not bar Doe's suit against her. Nonetheless, Doe does not have standing to bring this suit against the Clerk. Though Doe alleged an injury in fact, he did not satisfy the final two requirements for standing: causation and redressability.

#### 1. *Doe alleged an injury in fact.*

An injury in fact must be "concrete and particularized," *Lujan*, 504 U.S. at 560, and "actual or imminent," *id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). "When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, … [t]he 'injury in fact' … is the denial of equal treatment resulting from the imposition of the barrier." *Ne.*

*Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993).

This is the case here. Though Doe never submitted a petition, he alleged an actual, concrete, and particularized injury: that the statute denies him the benefit of obtaining a name change simply because he is not a U.S. citizen. *See Associated Gen. Contractors* at 666; *see also Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 496 (7th Cir. 2005) (noting that a plaintiff does not "lack[] standing merely because [he] asserts an injury that is shared by many people"). In fact, the barrier Doe faces is much worse than the one in the affirmative-action cases like *Associated General Contractors*, because it makes it impossible—not just difficult—for people in his class to obtain the desired state benefit, and that benefit is freely available to persons in the favored class (U.S. citizens).

This injury supports his due process and free speech claims just as it supports his equal protection claim. If the Indiana statute permitted citizens and non-citizens alike to change their legal names, Doe would not need to bring this suit claiming that he is denied due process and freedom of speech by not being able to change his.

   2. *Doe has not satisfied the final two standing requirements of causation and redressability.*

There must be a causal connection between the plaintiff's injury and the conduct of which he complains. *Lujan*, 504 U.S. at 560. That is, the plaintiff's injury must be "fairly traceable" to a defendant's actions. *Id.* Standing is not always lost when the causal connection is weak, *Banks v. Sec'y of Ind. Family &*

*Soc. Servs. Admin.*, 997 F.2d 231, 239 (7th Cir. 1993), and a defendant's actions need not be "the very last step in the chain of causation," *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997).

Once a plaintiff establishes an adequate causal connection, he must show that it is likely a favorable decision against the named defendant would redress the plaintiff's injury. *Lujan*, 504 U.S. at 561.

Doe argues that he has standing to sue the Clerk because her office distributes the Director's forms advertising the non-citizen exclusion, advises non-citizens that the statute requires proof of citizenship when they ask about the statute's requirements, and processes name-change petitions through an allegedly unconstitutional system.

But in processing the name-change petitions, the Clerk has no power to grant or deny a petition. She is tasked only with accepting and processing petitions without any authority to screen them. In fact, Doe's complaint acknowledged that the Clerk filed at least one non-citizen application in the past. (R. 24 at 13.) Because Doe failed to show that the Clerk has any authority in the name-change process, Doe has failed to show that his injury is fairly traceable to the Clerk's action of processing petitions. *Cf. Campaign for S. Equal. v. Miss. Dep't of Human Servs.*, 175 F. Supp. 3d 691, 703–05 (S.D. Miss. 2016) (finding that the plaintiffs had standing to sue the director of human services in a constitutional challenge to a state statute prohibiting adoptions by same-sex couples because the department of human services had the ability to block adoption applications).

The Clerk's other two actions can best be characterized as educating and informing the public about the name-change

statute's requirements. Even assuming Doe's injury was fairly traceable to this activity, Doe has not shown that any injunction the court may issue against the Clerk would be likely to redress his injury. The state courts would still deny Doe's petition on the basis of the citizenship requirement regardless of what information the Clerk provided to him.

## II. CONCLUSION

The Eleventh Amendment bars Doe's suit against the named state officials. And though the Marion County Clerk of Court is not a state official, Doe does not have standing to sue her. We therefore AFFIRM the district court's dismissal of Doe's suit. The federal courts are not the proper forum for his claims.

WOOD, *Chief Judge*, dissenting. This is an unusual case, but in the end it is not one that we should bar from adjudication. I therefore dissent from the majority's conclusion that John Doe's suit to change his name cannot move forward in its present form. As the majority notes, Doe is a Mexican national who is lawfully in the United States after a grant of asylum. As a transgender male, he wants to change his name from his birth-name of "Jane Doe" to the gender-appropriate name "John Doe." His efforts have been blocked by an Indiana law that requires name-change petitioners to provide proof of U.S. citizenship. Ind. Code § 34-28-2-2.5(a)(5) (2016).

My colleagues conclude that Doe's suit must be rejected before it is ever considered. They first note that Indiana's Governor is under no legal obligation to enforce the name-change statute. This fact, they say, means that the Eleventh Amendment bars Doe's suit against the Governor. *Ante* at 5–6. (I do not understand why a conclusion that a certain action lies outside the scope of a statute conferring authority on an official leads inexorably to a conclusion that the state's sovereign immunity also shields that official, but I put that question to one side for present purposes.) Next, they conclude that the state Attorney General is not a proper defendant, because they can identify no criminal penalties associated with name changes. *Id.* at 7. The Executive Director of State Court Administration falls out of the case because all the Director does is create non-mandatory forms, and they regard the link between those forms and name changes as too tenuous to support this lawsuit. *Id.* at 7–8. Finally, they conclude that Doe lacks standing to sue the Marion County Clerk of Court because Doe can neither establish a link between the Clerk's authority and a name-change order nor

can he show that any court order addressed to the Clerk would make a difference. *Id*. at 9–10.

In my view, the majority's analysis gives insufficient weight to the significant roles played by the Attorney General, Executive Director, and Clerk in enforcing the name-change statute and preventing Doe from securing official recognition of his identity. Because the authority and duties of all three undergird the deprivation of constitutional rights asserted by Doe, all three must answer to his suit. Moreover, while I agree with the majority that the Governor's role in administering section 34-28-2-2.5(a)(5) is attenuated, I would give Doe an opportunity to amend his complaint to name other executive-branch officials whose responsibilities include the policing of the name a person uses in order to receive services or to deal with the state.

Looking first at the Executive Director and the Clerk, one can see that their authority to create forms, issue guidance, and move along petitions, enables them to exert substantial influence on the name-change process. This is best illustrated by example. Suppose, for example, the Executive Director's name-change form stated at the top that no traditionally Muslim names could be submitted, and that the Clerk routinely discouraged or refused to accept applications with such names. Over and above the psychic harm of such an action (which itself would be at least as offensive as forbidding the teaching of a particular language, for instance, see *Meyer v. Nebraska*, 262 U.S. 390 (1923)), the chilling effect on name-changes for the group experiencing such discrimination would be powerful—powerful enough, I should think, to support an injunction against that practice.

I therefore do not agree with the majority that the Clerk's role is so minor that no effective relief can come from that quarter. Doe seeks to compel the Clerk to accept an application with a name that does not reflect his birth name and to stop discouraging attempts to submit such an application. The majority accepts counsel's word for the fact that Clerks in the past have accepted applications that do not conform to Indiana's name-change law, but at this early stage in the proceedings we do not have a complete record on this point. We must accept Doe's representation that such applications are normally rejected for noncompliance with Indiana law, and that an application from him would suffer the same fate.

As for the Attorney General, the majority acknowledges that Indiana's *courts* have the power to punish perjurers or those who commit a fraud on the court, but that is where it leaves matters. It observes that there are no criminal penalties directly tied to violations of Ind. Code §§ 34-28-2-2 and 34-28-2-2.5, and from this it assumes that the Attorney General has no meaningful role to play in their implementation. In fact, both perjury and fraud can also be prosecuted independently: Indiana recognizes perjury as a stand-alone crime, see Ind. Code § 35-44.1-2-1 (a felony; see also Ind. Code § 34-28-2-2(a) (requiring that name-change petitions include proof of citizenship and be sworn "under the penalties of perjury"), as well as obstruction of justice, see Ind. Code § 35-44.1-2-2 (a felony). Nonetheless, the majority appears to treat these consequences as too indirect to sweep in the Attorney General. I would not dismiss them so readily.

Furthermore, even if the majority has correctly assessed those criminal remedies, there is more to Doe's case than the possibility of abuse of the state court's process. Doe also cites

the misdemeanor of "false identity statement," which punishes knowing material misstatements of identity in connection with official proceedings or investigations, when done with the intent to mislead public servants. Ind. Code § 35-44.1-2-4. This is a big problem for Doe: if he presents himself in a manner that accords with his gender identity—that is, as John Doe, rather than under his "legal" name, Jane Doe—he is at risk of being prosecuted for a Class A misdemeanor. *Id.* at 35-44.1-2-4(a). And that is not all. For example, an applicant for a driver's license must provide "[t]he full legal name of the applicant." Ind. Code § 9-24-9-2(a)(1). Failure to comply with this requirement (or any other rule in that chapter of the Indiana Code) is a Class C infraction. Ind. Code § 9-24-9-6. These might not be the strictest penalties in the world, but they lie within the authority of the Attorney General to pursue, see Ind. Code § 4-6-1-6, and they easily support injury-in-fact, causation, and redressability. (Although Doe did not cite the BMV provision in his briefs, we are entitled to take judicial notice of Indiana's statutes. The extent to which these matters are addressed by the state's statutes is a pure question of law within this court's *de novo* review powers.) Taking all these provisions into account, Doe's case proves to be much closer to *Baskin v. Bogan*, 766 F.3d 648 (7th Cir. 2014), than the majority allows. Indeed, I would find it controlled by *Baskin* insofar as he is suing the Attorney General.

Last, we have the state's Governor. I agree with the majority that he was properly dismissed. From a practical standpoint, as it notes, one should not be able simply to sue the Governor every time some part of the state's executive branch does something objectionable. Instead, it is necessary in each instance to see how directly the Governor is connected with

the contested action. If the Governor has meaningful over-sight over a particular area, it has been established since at least *Ex parte Young*, 209 U.S. 123 (1908), that an aggrieved person may sue him or her as the responsible official for prospective injunctive relief without running afoul of the Eleventh Amendment. If instead the responsibility is lodged in a department head, such as the Commissioner of the BMV, then that official is the proper person to sue under the *Ex parte Young* regime. There are practical reasons for taking care not to have a system under which the Governor automatically stands in for every department head. Such a rule would burden the Governor's office with litigation over countless matters for which state law assigns primary responsibility to other officials (some of whom, such as the Attorney General, are independently elected).

The majority hints that Doe might "have been able to overcome the Eleventh Amendment had he sued the Governor to enjoin the enforcement of the BMV's requirements." *Ante* at 5. But then it immediately says that such a suit would have failed, because the Governor has no duty to enforce the name-change statute. Yet someone must have the authority to enforce that statute; I have explained above why I believe that one such person is the Attorney General, and I add here that another such person would have been the Commissioner of the BMV. This is not a case that forces us to accept the unpalatable notion that alleged constitutional violations escape all judicial review.

Consider the consequences if any state function entrusted to the state-court system were placed beyond the power of the federal courts to address (an outcome, I note, that would be incompatible with *Mitchum v. Foster*, 407 U.S. 225 (1972),

which upheld the power of the federal courts to issue civil-rights injunctions against state-court proceedings). A state hypothetically could refuse to allow an African-American person to change his or her surname on an identification-card to that of a Caucasian spouse, in flagrant violation of *Loving v. Virginia*, 388 U.S. 1 (1967), or it could pass a statute refusing to allow a single surname for a same-sex couple, in disregard of the Supreme Court's decision in *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015). The expedient of placing final authority for name-changes in the state court system cannot operate to avoid accountability for potential violations of the federal constitution by other state officials. Nor can it have the effect of negating the right of any person to bring an action under 42 U.S.C. § 1983, which lies within the subject-matter jurisdiction of the federal courts, see 28 U.S.C. §§ 1331, 1343(a).

In the end, I believe that the majority has attached too much importance to the fact that the state courts are the ones charged with the duty of issuing name-change orders. The fact that this responsibility is lodged in the courts does not mean that Doe's suit is nonjusticiable. Name changes are not the only state function that is assigned to state courts. Uncontested divorces go straight to the state court, for example, as do probate matters when a will needs to be probated, or an estate needs to be administered. When there is a problem in the system, those aggrieved by that problem sue the state official best suited to the situation. As I noted earlier, in addition to the avenues he chose, Doe could have sued the Commissioner of the BMV to compel the director to issue a driver's license to him in the name of "John Doe." If the Commissioner had refused, Doe could have raised his complaints about Indiana's name-change statute in a lawsuit in state or federal court. It is likely that the Commissioner

would have defended his action in such a lawsuit on the basis of the state statute, but Doe's response to such a defense would have rested on his constitutional rights.

Suing each department head, one by one, for particular redress would not be a particularly efficient system, but that seems to be the only path the majority has left open for an action in federal court. Evidently it acknowledges that Doe could sue the Commissioner of the BMV in order to get the proper name on his driver's license; the Commissioner of the Indiana Department of Revenue for the right to file his taxes under the proper name; the Recorder of Deeds where he lives in order to have a property deed listed under the proper name, and so on. I also understand the majority to be leaving open the door to a more general suit in state court. Such a suit might be triggered by the state court's predictable rejection of Doe's application for a name change. Doe might have a right to appeal that rejection to a higher Indiana court. If he does, then he can raise his federal claims there. If no such right of appeal exists—that is, if the name-change court is "the highest court of [the] State in which a decision could be had," 28 U.S.C. § 1257(a)—he could go straight to the U.S. Supreme Court. See *Thompson v. City of Louisville*, 362 U.S. 199, 202 (1960) (*certiorari* to local police court whose decisions were not otherwise appealable within the state-court system). What the majority has not explained to my satisfaction, however, is why the same suit cannot be brought in the form and forum Doe has chosen—that is, in a federal court, when no conflicting state-court proceeding or judgment exists.

What we know is enough to support Doe's lawsuit. We know that state *law* presently stands in the way of Doe's name change, because it insists on U.S. citizenship even though Doe

is lawfully in the country and is here as a recipient of asylum, meaning that he cannot safely return to his own country. The defendants (save the Governor) whom Doe already has named have the power to do something about his quandary. To repeat, Doe is alleging that the various state officials are refusing to process *his* case to correct his name, and that the state court would similarly deny relief unless the underlying law demanding U.S. citizenship is enjoined or otherwise set aside. This is more than enough to permit adjudication of the question whether such an injunction or declaratory judgment should be entered.

I would find that Doe can move forward against the Executive Director, the Clerk, and the Attorney General. I agree with my colleagues that the Governor was the wrong defendant. As I understand them, in addition, if Doe had named the various heads of agency or department who were responsible for recording a name on the different state-issued documents he holds, they may have come to a different result. In my view, Doe did not need to take the latter step, although if that is all that is needed to save the case, I would remand to give him the opportunity to do so. The underlying principle Doe is trying to vindicate is an important one, which has a broader application than may initially be apparent. I therefore respectfully dissent.