In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1225

ROBERT PLOTKIN and BETTER GOVERNMENT
ASSOCIATION,

Plaintiffs-Appellants,

v.

GEORGE H. RYAN, CITIZENS FOR GEORGE RYAN
CAMPAIGN COMMITTEE, JESSE WHITE, in his official
capacity as Illinois Secretary of State, et
al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99-C-53--James B. Zagel, Judge.

Argued November 28, 2000--Decided February 6, 2001

Before HARLINGTON WOOD, JR., DIANE P. WOOD, and EVANS,
Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge. This civil
case arises in the midst of an ongoing federal
criminal investigation, commonly referred to as
"Operation Safe Road." Being investigated are
alleged fraudulent activities during the 1990s in
the Illinois Commercial Drivers' License Program
as administered by the Illinois Secretary of
State's Office while George H. Ryan was Secretary
of State. Ryan is now Governor of Illinois and
has not been charged in the investigation. Press
reports indicate that so far at least thirty-five
people have been convicted in connection with the
three-year-old investigation. See, e.g., Matt
O'Connor, Bauer Takes Plea Deal; Ryan pal admits
to ending probes, agrees to 6-month prison
sentence, Chi. Trib., Jan. 18, 2001, at 1. Eighteen
of these individuals were former state employees.
Id. The former head of corruption investigations
in the Secretary of State's Office at the time in
question recently pleaded guilty to obstructing
a federal investigation. Id./1

The present case was filed in 1999 by the
Better Government Association ("BGA") and Robert
Plotkin, an Illinois citizen. It is alleged that

Secretary of State employees had been taking bribes to issue commercial drivers' licenses to unqualified applicants in order to meet campaign fundraising requirements imposed on them by some employees of the Secretary of State's Office in connection with Ryan's gubernatorial campaign. The complaint further asserts that Secretary of State employees were forced to engage in work for Ryan's campaign, often during regular work hours. Plaintiffs argue that those patronage practices violated their First and Fourteenth Amendment rights as protected by 42 U.S.C. sec. 1983 and further were in violation of the Shakman decree./2 The relief sought varies from injunctive and declaratory relief, to fines, the issuance of a rule to show cause, damages, and other appropriate relief. As to the Citizens for George Ryan Campaign Committee, plaintiffs seek the return of all money not shown to have been lawfully raised./3

Defendants filed motions to dismiss principally asserting a lack of standing on the part of plaintiffs. Standing was claimed by plaintiffs on the basis of Plotkin's status as an Illinois voter or, alternatively, as a user of Illinois highways. The BGA claimed standing on the basis of its members' status as Illinois voters/4 and also based on the fact that the organization itself expended time and money monitoring and investigating the alleged campaign fraud in the Secretary of State's Office. All the standing claims advanced by plaintiffs were rejected by the district court, which labeled plaintiffs as no more than "concerned bystanders." The district court considered other grounds it found to support dismissal, but we need only consider standing, not any alternative basis.

DISCUSSION

Article III standing is reviewed de novo, but we accept any factual findings made by the district court in resolving the standing question unless clearly erroneous. Perry v. Village of Arlington Heights, 186 F.3d 826, 828 (7th Cir. 1999).

The plaintiffs look to Shakman v. Democratic Organization of Cook County, 435 F.2d 267 (7th Cir. 1970) ("Shakman I"), for standing support; however, since our decision in Shakman I, the Supreme Court has reexamined justiciability and its limitations under the case-and-controversy provision of Article III. See Shakman v. Dunne, 829 F.2d 1387, 1393 (7th Cir. 1987) ("Shakman II"). We therefore must analyze plaintiffs' claims of standing under the latest criteria set out by the Supreme Court. Given the thorough examination of standing by this court in Shakman

II, we began with it. The court in Shakman II found the most comprehensive summary of the applicable standing criteria to be set forth in Allen v. Wright, 468 U.S. 737, 751 (1984), as follows: "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."/5 The Court expanded on this concept in Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Under Lujan, a party invoking federal jurisdiction must show (1) "injury in fact;" (2) a causal connection between the injury and the challenged conduct, i.e., "traceability;" and (3) that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. at 560-61 (citations omitted). Plaintiffs and defendants disagree as to whether the present case satisfies those easily-stated criteria, which can generate different views in their application. In resolving this dispute, we are also guided by the teaching of Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 44 (1976), which states that "unadorned speculation will not suffice to invoke the federal judicial power." These principles are not confined to the facts of any particular case, but are broadly relevant to standing in any Article III controversy.

It is obvious to us as we review the claims alleged by plaintiffs that, in spite of plaintiffs' good intentions, the federal standing requirements cannot be met. First, plaintiffs' claims of standing based on their status as voters fail based on a lack of redressability. The alleged injury-in-fact for these claims is that defendants' illegal conduct skewed the election results in favor of George Ryan and, in the process, diluted the impact of their votes. Plaintiffs concede that they cannot have the results of the 1998 gubernatorial election set aside by this suit, but ask for injunctive relief, findings of contempt, and the imposition of fines. In their reply brief, plaintiffs argue that they have voter standing based on the Supreme Court's recent decision in Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., 120 S. Ct. 693 (2000)./6 However, while the Court in Laidlaw, 120 S. Ct. at 707, recognized that the deterrent effect of civil penalties "afford[s] redress to citizen plaintiffs who are injured or threatened with injury as a consequence of ongoing unlawful conduct," it expressly acknowledged the continued validity of Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998), which "established that citizen suitors lack standing to seek civil penalties for violations that have abated by the time of suit." Laidlaw, 120 S. Ct.

at 707 (citing Steel Co., 523 U.S. at 106-07)./7 At the time this suit was filed, on January 7, 1999, the election had concluded, and Ryan, a Republican, was the Governor-elect. Jesse White, the Democratic candidate, had been elected Secretary of State. Plaintiffs make no allegations that the bribes-for-commercial-drivers'-licenses scheme is continuing under Secretary White's administration, contending only that "[t]here exists in the Secretary of State's office a deep-seated culture and policy or custom of intertwining and requiring coerced partisan political work together with the official duties of the office," and as a result, "[t]here is a substantial likelihood that without remedial steps being taken that such or similar unlawful conduct will continue." These allegations are purely speculative.

Furthermore, plaintiffs ask that Ryan's campaign committee be forced to return any funds not shown to be lawfully raised. Upon questioning at oral argument, counsel for plaintiffs suggested that the money be returned to either the employees or the individuals who gave the bribes in order to send a message to Ryan and the committee that they cannot profit from their alleged wrongdoing. It is unclear how such action would redress the alleged injury-in-fact. That a plaintiff may derive satisfaction from the fact that a wrongdoer gets his just desserts does not constitute an acceptable Article III remedy. Steel Co., 523 U.S. at 107. No case has gone so far as we are asked to go by plaintiffs in this case, and we are not free to do so. Plaintiffs bear the burden of establishing standing, and each element, including redressability, must be supported by more than unadorned speculation. Because none of the relief sought would likely remedy the alleged injury-in-fact, plaintiffs fail to demonstrate redressability, a necessary element for Article III standing. Therefore, we need not address the other two required factors. Plaintiffs' claims based on voter standing fail.

We need not reach the broader question whether there is some kind of remedy, under state or federal law, available to Illinois voters to address the problem of the misuse of state worker time when those workers are conscripted by their supervisors into an alleged captive army of campaign workers. Additionally, this case is distinguishable from the Supreme Court's decision in Rutan v. Republican Party of Illinois, 497 U.S. 62 (1990), because in the present case no member of the so-called "captive army" is a plaintiff.

Plotkin's claim of standing based on the use of Illinois highways must also fail. As the Supreme

Court noted in Lujan, in order to satisfy the injury requirement, a plaintiff must show that he has suffered an invasion of a legally-protected interest that is both "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal quotations and citations omitted). Plotkin argues that he has suffered injury in the form of an increased risk of accidents because unqualified drivers have illegally obtained commercial drivers' licenses; however, this risk is too speculative and generalized to constitute an injury-in-fact for standing purposes. If Plotkin allegedly suffers injury from an increased risk of accident, then so do all people using Illinois highways, including the judges of this court as was mentioned at oral argument. There are necessarily many outside unknown influences affecting all aspects of these standing concepts advanced by plaintiffs.

Finally, the BGA claims that it has standing as an organization, apart from its members, simply by reason of its expenditure of time and money in pursuing the alleged fraud. However, ordinary expenditures as part of an organization's purpose do not constitute the necessary injury-in-fact required for standing. The BGA in the past has been instrumental in advancing government reforms in Illinois by using investigators and attorneys along with journalistic techniques and litigation to expose corruption./8 This decision does not curtail those regular techniques of the BGA. It only means good intentions are not enough for federal standing.

The district court characterized it well when it said that "plaintiffs are simply no more than concerned bystanders and do not have standing to challenge these actions in this court." Were the requirements of standing to be compromised as suggested in this suit, it would no longer be a useful jurisdictional concept.

The parties shall bear their own costs.

AFFIRMED.


/1 None of the cases involved have so far reached this court.

/2 See Shakman v. Democratic Org. of Cook County, 481 F. Supp. 1315 (N.D. Ill. 1979).

/3 The State of Illinois in the past has seen some alleged corruption in high places. See, e.g., United States v. Ladd, 218 F.3d 701 (7th Cir. 2000); United States v. Martin, 195 F.3d 961 (7th

Cir. 1999); United States v. Isaacs, 493 F.2d 1124 (7th Cir. 1974); United States v. Downey, 195 F. Supp. 581 (S.D. Ill. 1961); Robert Hartley, Still a Mystery Man; The death of Paul Powell in 1970 had a big impact on public affairs, State J. Reg. Springfield, Illinois, Oct. 8, 2000, at 17.

/4 As the Supreme Court noted in Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., 120 S. Ct. 693 (2000),

[a]n association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Id. at 704 (citing Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977)).

/5 Later cases have referred to this test as the "irreducible constitutional minimum of standing." See, e.g., Bennett v. Spear, 520 U.S. 154, 162 (1997) (internal quotations and citations omitted). The Shakman decree cannot create standing in cases in which the requirements of Article III are not satisfied.

/6 Plaintiffs address Laidlaw in their initial brief in connection with Plotkin's claim of standing based on his use of Illinois highways.

/7 Plaintiffs argue that this position gives politicians "carte blanche unless a suit can be filed and brought to judgment while the election is going on." However, the Court in Laidlaw highlighted the difference between standing, which must exist at the time of the commencement of the litigation, and mootness. See Laidlaw, 120 S. Ct. at 708-10.

/8 For further information, see the BGA web site, http://www.bettergov.org.