**ILLINOIS ASSOCIATION OF MORTGAGE BROKERS, an Illinois not-for-profit corporation, Plaintiff,**

v.

**OFFICE OF BANKS AND REAL ESTATE, an Illinois state agency, William A. Darr, not personally but in his official capacity as commissioner of the Office of Banks and Real Estate, Defendants.**

No. 01 C 5151.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 4, 2001.

Raymond John Ostler, Robert Michael Gomberg, John Joseph Lydon, Lawrence A. Gold, Gomberg, Shafman, Gold & Ostler, Chicago, IL, for plaintiff.

Jeffrey P. Gray, Illinois Attorney General's Office, Meghan O'Donnell Maine, Chicago, IL, Nina E. Vinik, Chicago Lawyer's Committee for Civil Rights, Chicago, IL, William J. Harte, William J. Hart, Ltd., Chicago, IL, Diana White, Legal Assistance Foundation of Chicago, Chicago, IL, David W. Ellis, Williams, Collins & Bax, Chicago, IL, for defendants.

## ORDER AND OPINION

NORGLE, District Judge.

Before the court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for want of subject matter jurisdiction, and Defendant's motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim or, in the alternative for summary judgment pursuant to Rule 56. For the following reasons, Defendant's 12(b)(1) motion is denied, Defendant's motion for summary judgment pursuant to Rule 56 is granted.

## I. BACKGROUND[1]

On May 17, 2001, Defendant, the Office of Banks and Real Estate an Illinois State Agency, amended its regulations ("new OBRE regulations"), which now impose stricter terms on lenders regarding the origination of high risk home loans, in an attempt to limit predatory lending. Ill.Admin.Code tit. 38, § 1050.155(a). Plaintiff, the Illinois Association of Mortgage Brokers, claims the new OBRE regulations run contrary to a previously enacted federal statute, specifically the Alternative Mortgage Transaction Parity Act of 1982, Pub.L. No. 97–320, 96 Stat. 1469 (1982) ("AMTPA"). Plaintiff claims that AMTPA preempts the new OBRE regulations making the new OBRE regulations invalid. Plaintiff seeks to obtain a preliminary injunction of the new OBRE regulations, enjoining their enforcement. Defendant claims that even if Plaintiff's assertions have merit, Plaintiff is not the appropriate party to bring suit. The question of whether Plaintiff has standing to invoke federal subject matter jurisdiction in this case is the only disputed fact. All other claims are based on interpretation of the new OBRE regulations and federal statutes. Defendant claims that the new OBRE regulations are not pre-empted by AMTPA, but are consistent with the Home Ownership and Equity Protection Act of 1994, Pub.L. No. 103–325, 108 Stat. 2160 (1994) ("HOEPA"). The court addresses each point in turn.

## II. DISCUSSION

### A. Standing

The first issue the court addresses is standing. Defendant asserts that

1. The court takes the facts from the parties accompanying briefs.

Plaintiff does not have proper standing to satisfy subject matter jurisdiction, and moves to dismiss the case accordingly under Rule 12(b)(1). For the purposes of a 12(b)(1) motion, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Martin v. Shalala*, 63 F.3d 497, 501 (7th Cir.1995); *Rueth v. United States Environmental Protection Agency*, 13 F.3d 227, 227 (7th Cir.1993). The court, when determining the validity of a motion to dismiss, may properly look beyond the jurisdictional allegations of the complaint and view all the evidence that has been submitted to determine if subject matter jurisdiction exists. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir.1995). When the party moving for dismissal under 12(b)(1) challenges the factual basis for jurisdiction, the non-moving party has the obligation to submit evidence demonstrating subject matter jurisdiction. *Kontos v. United States Dept. of Labor*, 826 F.2d 573, 576 (7th Cir.1987).

Plaintiff, an association, must clear two hurdles in order to show that it has proper standing to invoke federal subject matter jurisdiction. First, Plaintiff must show that there is a case or controversy within the meaning of Article III. *Krislov v. Rednour*, 226 F.3d 851, 856 (7th Cir.2000). Second, Plaintiff must show that it has associational standing to bring this claim for relief. *Plotkin v. Ryan*, 239 F.3d 882, 884 (7th Cir.2001) Without standing, the court has no subject matter jurisdiction over the matter as prescribed by Article III of the Constitution. Standing is a question of federal law, and it falls to the party asserting jurisdiction to establish the right to judicial review. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *Indemnified*

*Capital Investments, S.A. v. R.J. O'Brien & Assoc., Inc.*, 12 F.3d 1406, 1408–09 (7th Cir.1993).

Plaintiff, through affidavit, has successfully demonstrated that not only is there proper standing to invoke federal subject matter jurisdiction, but also that this particular association is the proper association to assert those claims.

### 1. Article III Standing

To establish Article III standing Plaintiff must demonstrate: (1) imminent or actual "injury in fact," that is, an "invasion of a legally protected interest" that is concrete and particularized rather than conjectural or hypothetical, *Defenders of Wildlife*, 504 U.S. at 560–61, 112 S.Ct. 2130; (2) a causal connection between its injury and the challenged conduct that is fairly traceable to Defendant rather than to the "independent action of some third party not before the court," *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); and (3) the likelihood that its injury will be redressed by a favorable court decision, *see, e.g., id.* at 42–46, 96 S.Ct. 1917; *Allen v. Wright*, 468 U.S. 737, 753 n. 19, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

First, Plaintiff can show an imminent injury in fact. The new OBRE regulations will adversely affect the way that Plaintiff's members, mortgage brokers, conduct their lending practices and procedures. If the new OBRE regulations are determined to be valid, a new set of triggers will be imposed regarding the terms and conditions mortgage brokers must use in making high risk home loans, limiting the amount of revenue they would earn on the loans. Second, there appears to be no question that the injury complained of is traceable to Defendant. Defendant is responsible for promulgating the new OBRE regulations. Finally, Plaintiff can show

820

that the injury will be redressed be the court's decision on this matter. The court's determination as to whether the new OBRE regulation is pre-empted by AMTPA or consistent with HOEPA will redress the situation.

## 2. Associational Standing

■ To establish associational standing Plaintiff must demonstrate that: (1) its members would otherwise have standing to sue in their own right, *Friends of the Earth Inc. v. Laidlaw Environmental Services,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citing *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)); (2) the interests at stake are germane to the organization's purpose, *id.;* and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Id.*

Plaintiff's affidavit demonstrates that it has associational standing. (*See* Pl.'s Resp.Br., App. A.) Plaintiff's president, Al Wood, is the Vice–President of Carlton Mortgage and is a mortgage lender that makes home equity loans on residential real property, as do a majority of the other members of the Plaintiff association. (*Id.*) Al Wood makes "high risk loans" on alternative home mortgages, within the meaning of the new OBRE regulations. (*Id.*) Thus, Al Wood as an individual has standing to sue Defendant, just like the majority of the association. *See generally, Friends of the Earth Inc.,* 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). Additionally, the interests at stake in the suit are germain to the association. Plaintiff is attempting to nullify a new state regulation that affects the way in which mortgage brokers can conduct business. The new OBRE regulations restrict the types of mortgages that the mortgage broker can

make. Finally, no individual member is needed to participate in the lawsuit. The only real issue in this case is the interpretation of the new OBRE regulations as compared with federal statutes. The claim for relief is not factually based but analytically based upon statutory interpretation. The matter may be fully addressed through the adequate representation of counsel. Therefore, Plaintiff has standing to bring this suit. Defendant's 12(b)(1) motion to dismiss is denied.

## B. Converting a Rule 12(b)(6) motion to Summary Judgment

■ Defendant also moves to dismiss the complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) or in the alternative for summary judgment in accordance with Fed.R.Civ.P. 56. When reviewing a motion to dismiss under Rule 12(b)(6), the court merely looks at the sufficiency of the complaint, *Autry v. Northwest Prem. Servs. Inc.,* 144 F.3d 1037, 1039 (7th Cir.1998), it does not decide whether the plaintiff has a winning claim. *Herdrich v. Pegram, M.D.,* 154 F.3d 362, 369 (7th Cir.1998); *see also McCormick v. City of Chicago,* 230 F.3d 319, 323–26 (7th Cir.2000) (analyzing *Leatherman v. Tarrant County,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) and reversing the Rule 12(b)(6) dismissal of claims based on §§ 1981 & 1983); *Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir.1998) ("Complaints need not plead law or match facts to every element of a legal theory. . . .") Furthermore, Rule 12(b) states that:

"[i]f on a motion asserting the defense number (6) to dismiss for failure of the pleadings to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in

Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

Fed.R.Civ.Pro. 12(b).

When a defendant files a motion to dismiss and presents matters outside the complaint, the court may either disregard the extraneous submissions or convert the motion to one for summary judgment. *Jacobs v. City of Chicago,* 215 F.3d 758, 766 (7th Cir.2000). If the court chooses to convert a 12(b)(6) motion to one for summary judgment, the non-moving party must have the opportunity to respond accordingly. *Massey v. Helman,* 259 F.3d 641, 646 n. 8 (7th Cir.2001); *Alioto v. Marshall Field's & Co.,* 77 F.3d 934, 936 (7th Cir.1996) (holding that a non-movant party must show that he can created a genuine issue of material fact if given the opportunity to respond, in order for conversion of a 12(b)(6) to be found in error.) In this case, however, parties agree that there are no factual disputes and present the court with a pure question of law. Moreover, the parties have presented their arguments in a manner more akin to summary judgment than a Rule 12(b)(6) motion. With no factual dispute, and the parties approaching the issue as summary judgment, the court treats the motion as a summary judgment motion and not as a motion to dismiss.

Summary judgment is permissible when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). That is the posture of this case. There are no factual disputes. The issue is one of pre-emption, which is amendable to summary judgment.

### C. Interpreting Federal Statutes and OBRE Regulations

The crux of this case is based on the statutory interpretation of two federal statutes and their relationship to a state regulation. When interpreting statutes one must look at the new versus the old, the specific versus the general. *Wisconsin Winnebago Bus. Comm. v. Koberstein,* 762 F.2d 613, 618 (7th Cir.1985). If the statutes can be read together and both given their full meaning then that is the best approach, but if the statutes conflict the inconsistencies must be looked at and determined. *United States v. Palumbo Bros.,* 145 F.3d 850, 866 (7th Cir.1998) (quoting *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974)). "In situations when a general statute and a specific statute appear to be in conflict, courts have relied upon the general rule that 'a more specific statute covering a particular subject is controlling over a provision covering the same subject in more general terms....'" *Barber v. Alpha One Mortgage Corp.,* 266 B.R. 309, 321 (Bankr. E.D.Pa.2001) (quoting *In re Sullivan,* 254 B.R. 661, 666 (Bankr.N.J.2000)). "Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Id.* "The rationale for this canon is that a general provision should not be applied when doing so would undermine limitations created by a more specific provision." *Coady v. Vaughn,* 251 F.3d 480, 484 (3d Cir.2001); *see also Selected Risks Insurance Co. v. Kobelinski,* 421 F.Supp. 431, 434 (E.D.Pa. 1976) (holding that "it is a maxim of statutory construction that the specific governs the general.").

Plaintiff contends that AMTPA preempts the new OBRE regulations. Defendant contends that the new OBRE regulations are not pre-empted by AMTPA but are in fact consistent with HOEPA, a federal statute which is more recent and specific than AMTPA. The first issue the

court addresses is which federal statute should be applied to the new OBRE regulations and why.

## 1. Interpreting AMTPA

AMTPA, enacted in 1982, provides funds to homeowners by allowing them easy access to "alternative home loans." Alternative home loans are loans drawn against a person's home for purposes other than the initial purchase of the home. 12 U.S.C.A. § 3802(a)(1). AMTPA "represents a congressional response to a concern, amongst others, that state bans on mortgages other than traditional fixed rate mortgages would reduce the overall availability of mortgage credit, since fixed-rate mortgages had become relatively more expensive as the result of increased interest rate volatility." *Grunbeck v. Dime Sav. Bank, FSB*, 74 F.3d 331, 343 (1st Cir.1996). The act was a direct result from the high interest rates being charged on mortgages in the 1980's. 12 U.S.C.A. § 3801(a)(2).

The statute was an attempt to help jumpstart a stalled economy by providing easy and unified access to money and lending institutions. Its stated purpose is to "eliminate the discriminatory impact that [state] regulations have upon non-federally chartered housing creditors and provide them with parity with federally chartered institutions by authorizing all housing creditors to make ... alternative mortgage transactions so long as the transactions are in conformity with the regulations issued by the federal government." 12 U.S.C.A. § 3801(b); *National Home Equity Mortgage Assoc. v. Face*, 239 F.3d 633, 637 (4th Cir.2001). Yet, the statute fails to go into any detail as to how is will accomplish its goals. AMTPA merely sets forth principles on the ability to acquire alternative home loans but it does not discuss the terms for acquiring the loan.

## 2. Interpreting HOEPA

HOEPA, enacted in 1994, is an amendment to the Truth in Lending Act ("TILA"). 15 U.S.C.A. 1601, *et. al.*. HOEPA is a response to the substantive abuses brought by providing alternative home loans. HOEPA and its regulations establish a cost threshold, which, once exceeded, triggers a set of restrictions on lending practices to high risk loans. 15 U.S.C.A. § 1602(aa)(1). The restrictions are activated when certain parameters are met, specifically when:

> "the annual percentage rate at consummation of the transaction will exceed by more than *10 percentage points* the yield on Treasury securities ... or the total points and fees payable by the consumer at or before closing will exceed the greater of *8 percent* of the total loan amount; or *$400*."

15 U.S.C.A. § 1602(aa)(1) (emphasis added).

The legislative history of HOEPA, in both the Senate and House Reports, explains that the purpose of the HOEPA amendments to TILA is to address the problem of "reverse redlining," which is the practice of targeting residents in certain geographic areas for credit on unfair terms. H.R.Rep. No. 103–652, at 158 (1994), U.S.Code Cong. & Admin.News 1994, pp. 1977, 1988. "The triggers in the legislation are not intended as caps, but rather to ensure that enhanced protections are provided to consumers that are most vulnerable to abuse without impeding the flow of credit." H.R.Rep. No. 103–652, at 159 (1994), U.S.Code Cong. & Admin.News 1994, pp. 1977, 1989.

## 3. Comparing AMTPA and HOEPA to the new OBRE regulations.

AMTPA and HOEPA were both enacted to help stabilize the lending market ·by dealing with situations involving mortgages and the lending practices be-

hind them. That is were the similarities end between the two statutes. AMTPA's purpose was to increase the availability of credit through alternative mortgage trans- actions for the average home owner. HOEPA was enacted to prevent mortgage companies from taking advantage of the average home owner acquiring an alternative home mortgage.

HOEPA, which was enacted 12 years after AMTPA, was enacted in response to the growing abuses by mortgage companies. HOEPA specifically lays out the guidelines, rules, and parameters governing alternative mortgages. 15 U.S.C.A. § 1602. The new OBRE regulations closely resemble the guidelines and rules set forth in HOEPA, and even track the verbiage of HOEPA, addressing the terms for giving alternative home mortgages to high risk individuals. *See generally* Ill.Admin.Code tit. 38, § 1050.155(a).

The purpose of the new OBRE regulations, although dealing with alternative home mortgages similar to those in AMTPA and HOEPA, is aimed at preventing predatory lending. AMTPA does not go into the specifics that both HOEPA and the new OBRE regulations discuss about predatory lending and high cost loans. "The specificity of HOEPA in addressing this subject as to all high cost loans prevails over the more general provisions of AMTPA." *Williams v. Gelt Financial Corp.*, 232 B.R. 629, 637 (Bankr.E.D.Pa. 1999). Therefore, HOEPA, being the more recent and specific statute dealing with predatory lending and high cost loans, is the statute the court must analyze to determine if it pre-empts the new OBRE regulation.

**4. Determining the consistency between the new OBRE regulations and HOEPA**

■■■■■ In making the determination of whether state law conflicts with federal law, the questions that must be answered are whether "it is impossible to comply with both state and federal law" or whether "the state law stands as an obstacle to the accomplishment of the full purposes and objectives" of the relevant federal law. *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984); *see also Feikema v. Texaco, Inc.*, 16 F.3d 1408, 1413 (4th Cir.1994).

> "The principles for determining whether a state law is preempted are well established. If a state and federal regulation directly conflict, the Supremacy Clause, U.S. Const., art. VI, has been interpreted to mandate preemption whenever the state action 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' Absent a direct conflict, preemption depends on the intent of Congress."

*Bucyrus–Erie Co. v. the Dept. of Industry, Labor and Human Relations of the State of Wisc.*, 599 F.2d 205, 207 (7th Cir.1979) (citations omitted). Congressional intent may be express or implied. *Id.* Preemption may be implied when the "structure and purpose" of the federal act presuppose exclusive federal regulation. *Id.* If the intention to preempt is express, there is no need to examine Congress' intent any further. *Id.*

■■■■■ HOEPA does not preempt the new OBRE regulations. The new OBRE regulations merely impose a stricter warning system to potential mortgagee's than that set forth in HOEPA. The new OBRE regulations are, in essence, setting forth the same warning system as in HOEPA. The only major difference between the new OBRE regulations and HOEPA is that the new OBRE regulations begin at a different set of triggers than those found in HOEPA. The new OBRE regulation's triggers are set at:

"the time of origination, the APR exceeds by more than 6 percentage points in the case of a first lien mortgage, or by more than *8 percentage points* in the case of a junior mortgage ... or (b) the total points and fees payable by the consumer at or before closing will exceed the greater of *5%* of the total loan amount or *$800*."

Ill.Admin.Code tit. 38, § 1050.155(a) (emphasis added). In HOEPA, by contrast, the triggers are set at:

"the annual percentage rate at consummation of the transaction will exceed by more than *10 percentage points* the yield on Treasury securities ... or the total points and fees payable by the consumer at or before closing will exceed the greater of *8 percent* of the total loan amount; or *$400*."

15 U.S.C.A. § 1602(aa)(1) (emphasis added)

The new OBRE regulations do not limit the amount of credit mortgage brokers can give in opposition to AMTPA. The new OBRE regulations merely impose certain conditions on how that credit is to be given, consistent with HOEPA. If the mortgage brokers comply with the conditions set forth in the new OBRE regulations, they are free to lend to whomever they wish. It is possible to comply with the new OBRE regulations and HOEPA. The new OBRE regulations do not stand as an obstacle to the accomplishment of the full purposes and objectives of HOEPA. The new OBRE regulations are consistent with HOEPA,[2] and therefore valid. 15 U.S.C.A. 1610(b).

## III. CONCLUSION

For the foregoing reasons Defendant's Federal Rule of Civil Procedure 12(b)(1) motion to dismiss is denied. Defendant's motion for summary judgment, in the alternative, is granted, terminating the case. All other issues before the court are therefore rendered moot.

IT IS SO ORDERED.

---

2. As an aside, the court notes that the concerns of Illinois, and many other states, particularly New York and North Carolina, have not gone unnoticed by the federal government. Congress is currently attempting to amend HOEPA, imposing stricter triggers, and reducing the ability of mortgage brokers to prey on unsuspecting home owners. *Predatory Lending Consumer Protection Act of 2001*, H.R. 1051, 107th Cong. (2001). Specifically the new statute calls for the triggers to be set when: "the transaction is secured by a junior or subordinate mortgage on the consumer's principal dwelling and the annual percentage rate on the credit, at the consummation of the transaction, will exceed by more than *8 percentage points* ..." H.R. 1051, 107th Cong. § 2(a)(aa)(II) (2001) (emphasis added); or when "[t]he total points and fees payable on the transaction will exceed the greater of *5 percent* of the total loan amount or *$1,000*." H.R. 1051, 107th Cong. § 2(a)(aa)(III) (2001) (emphasis added). The proposed federal statute clearly shows that OBRE's regulations are consistent with the purpose of HOEPA.